(September 5, 1908.)

## ALFRED RATHBUN, Trustee, Plaintiff, v. STATE, Defendant.

[97 Pac. 335.]

LIEN LAW—MECHANICS' AND MATERIALMEN'S LIENS—NOT ENFORCEABLE AGAINST THE STATE—LIABILITY OF STATE TO LABORERS, SUBCONTRACTORS AND MATERIALMEN—CONSTRUCTION OF CONTRACT.

. 1. The lien laws of this state do not authorize or justify mechanics', laborers' or materialmen's liens against state buildings.

2. A provision in a building contract entered into between the state and a contractor which provides that, "If at any time there should be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify against such lien or claim," does not authorize or justify the state in withholding pay-

ments from the contractor and paying the same to laborers and materialmen, unless the state has become directly responsible to such laborers and materialmen by contract, either express or implied.

3. ID.—Under such a stipulation in a building contract, entered into between the state and the contractor, the state cannot legally withhold from the contractor any claims that it may have allowed merely by reason of the claimant's having either worked for the contractor on the building or improvement or having furnished materials that were used therein; nor can it withhold any sum or amount on the theory that if the work were being done for a private individual, the same would be lienable, and the laborer or materialman might prefer his lien therefor.

4. Evidence examined in this case, and *held* that it does not justify or support the contention made by plaintiff that he is entitled to recover for the extras claimed in this case.

(Syllabus by the court.)

Original action in this court for recommendatory judgment by Alfred Rathbun, as trustee of the estate of John W. Walker, a bankrupt, against the state for the judgment of this court as to the liability of the state for certain claims and demands preferred by the trustee of the bankrupt estate. Judgment for the plaintiff in the sum of $4,298, with interest from June 3, 1906.

Neal & Kinyon, for Plaintiff.

The provisions of art. 9 of Walker's contract with defendant do not create any sort of lien in favor of creditors of Walker, who have no contract relation directly with the state, nor any contract relation with Walker whereby a right to lien is expressly preserved by contract of the parties. (Bankrupt Act, sec. 67; 1 Fed. St. Ann. 688; Collier's Bankruptcy, 5th ed., 517.)

When a state enters into a contract with a private individual it relinquishes its sovereign character as to such transaction, and, as a general rule, can claim no exemption from the rules of law applicable to contracts of private parties under like circumstances. (26 Am. & Eng. Ency., 2d ed., 477; *Davis v. Gray*, 83 U. S. (16 Wall.) 203, 21 L. ed. 447; *Patton v. Gilmer*, 42 Ala. 548, 94 Am. Dec. 665; *Calloway*

*v. Cossart,* 45 Ark. 81; *Chapman v. State,* 104 Cal. 690, 43 Am. St. Rep. 158, 163, 38 Pac. 457; *Boston Molasses Co. v. Commonwealth,* 193 Mass. 387, 79 N. E. 827; *Carr v. State,* 127 Ind. 204, 22 Am. St. Rep. 624, 26 N. E. 778, 11 L. R. A. 370, 371, and note; *People v. Stephens,* 71 N. Y. 549; *Danolds v. State,* 89 N. Y. 36, 42 Am. St. Rep. 277.)

The power of the court to allow "legal rights" against the state does not include "mere moral obligations" which are neither legal nor equitable. (Page on Contracts, sec. 1007, pp. 1583, 1584; *Western etc. Ry. Co. v. State* (Ga.), 14 L. R. A. 438, 447; *United States v. Gleeson,* 124 U. S. 258, 8 Sup. Ct. 502, 31 L. ed. 421; *Coates v. United States,* 53 Fed. 989, 991, 992, 4 C. C. A. 138; *Young v. State,* 19 Wash. 636, 54 Pac. 36; *Julian v. State,* 122 Ind. 68, 23 N. E. 690, 693; *Lewis v. Colgan* (Cal.), 44 Pac. 1081.)

J. J. Guheen, Attorney General, Edwin Snow and Jesse B. Hawley, for Defendant.

The state board of examiners is supreme in its jurisdiction, and its allowance or disallowance of a claim is a matter of its own discretion. Under clause 9 of this contract, it had a right to withhold payment whenever there was any evidence of a claim which might be an obligation of the state, and it therefore had the right to declare what claims would be an obligation against the state. Its action is final, creating an obligation on the part of the state to pay whenever there is a fund for that specific purpose. (*Winters v. Ramsey,* 4 Ida. 303, 39 Pac. 193; *Pyke v. Stuenenberg,* 5 Ida. 614, 51 Pac. 614; sec. 18 of art. IV, Const. of Idaho.)

We cannot see that the plaintiff in this case comes in good faith, for he is seeking to recover from the state money which beyond question he owes to the very men the state are trying to pay out of the fund which these men's material and labor have made for him. (*Independent School Dist. v. Madis,* 106 Iowa, 295, 76 N. W. 794.)

In a case between individuals where the defendant had not the power to protect himself, which in this case the state has, a clause similar to the one involved in this case was held

to be for the benefit of the laborer and materialman, as well as for the benefit of the builder. (*Dempsey v. Schawacker,* 140 Mo. 680, 38 S. W. 954, 41 S. W. 1100.)

One who is the equitable assignee of a fund has an equitable property in such fund. (Pomeroy's Eq. Jur., sec. 1280.)

By the contract . . . . the money in the hands of the board was subject to the exercise of this power, and the power was exercised. The board had received notice of these demands, and determined to hold, and did hold, this money for the protection of subcontractors and laborers, according to the terms of the contract. (*Luthy v. Wood,* 6 Mo. App. 67.)

AILSHIE, C. J.—This is an original action in this court, instituted by the trustee in bankruptcy, for the purpose of determining the liability of the state on account of certain building contracts hereinafter considered. The state answered and the plaintiff demurred to the answer, and also moved to strike out certain portions thereof. At the May term, 1907, both the demurrer and motion were overruled and the following opinion was announced from the bench:

"In this case the plaintiff, Alfred Rathbun, is the trustee of the estate of John W. Walker, a bankrupt. Walker was adjudged a bankrupt by the United States district court for the central division of the district of Idaho, and the plaintiff herein was elected trustee under the bankruptcy law. Walker had entered into a contract with the board of trustees of the Idaho Soldiers' Home for the furnishing of materials and supplies and the performance of certain labor in completing the construction of a building for that institution. He had also entered into a similar contract with the board of trustees of the Idaho Industrial Training School for the furnishing of materials and supplies and constructing certain buildings and improvements for that institution. The printed form of each of the contracts is the same, and appears to be that form known as the 'Uniform Contract Adopted and Recommended for General Use by the American Institute of Architects and the National Association of Builders.' The printed form is quite lengthy, consisting of thirteen articles. The ninth article in each of these con-

tracts contains the following printed matter, which furnished the principal bone of contention in this controversy, and is as follows:

" 'The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued. If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify against such lien or claim.'

"The state acting, as it alleges, under the authority of the foregoing provisions of the contract, was advised and informed that various claims existed against these buildings and improvements, and that immediately after the contractor, Walker, had absconded, the various laborers and materialmen who had contributed labor or furnished material for these contractors began clamoring for their pay, and asserted their claims against the contractor and the buildings and improvements on which they had labored and for which they had furnished material. The state further alleges that after being apprised of these claims it instituted an investigation through its proper officers as to the validity, justice and correctness of these claims, and that after it had ascertained those facts, the board of examiners audited and allowed such claims as were legal and just in favor of the several claimants. The state, therefore, claims that there is nothing due or owing to the contractor or his legal representative, the trustee in bankruptcy. The trustee contends, on the other hand, that the foregoing provision of the contract does not authorize the state to pay any sum due the contractor to any of the laborers or materialmen or to anyone other than the contractor or his legal representative. In the first place, it is conceded by the state that the lien laws of this state do not authorize mechanics', laborers' and materialmen's liens on state property and buildings such as were erected and constructed in this case. It will be noticed that the contract only author-

izes the state to withhold such sums and amounts as constitute 'any lien or claim for which, if established, the owner of the said premises might become liable and which is chargeable to the contractor.' Now, then, if there is no such thing as a lien against state property, the word 'lien' can have no significance in this contract. The several claimants having no right to file liens against this property could not, therefore, under the lien law, have any claims for which 'the owner of the said premises might become liable.' The state would not be authorized to withhold any sum unless it should be for a lien or claim which, if established in a court of justice, would bind the state as the owner of the property—that is, for which the state would become legally liable. This clause of the contract is in common use between individuals or corporations where the lien laws apply, and give laborers and materialmen the right to file liens against the property. This provision was evidently either left in the contract when executed under the supposition that liens might be filed against the state, or, on the other theory, which is more probable, that it was of no consequence one way or the other, and would neither be to the advantage nor prejudice of either party to the contract. It should be remembered, however, that the word 'claim' is also used in this clause of the contract. This word has a different significance in this connection. A laborer or materialman might have a claim against the state within the meaning of that term and yet be entitled to no lien to secure the payment of the same. The state, through its proper officers and agents, might employ a man to superintend the works or a laborer or laborers to perform work, or they might have ordered some specific article of material or furnishings to be used in the building and improvements, or they might have requested materialmen to supply the contractor with certain articles or material and agreed that the state would pay the same, or would withhold a certain amount out of the contract price with which to pay them. In all such cases and instances as above supposed, this clause of the contract would be a protection to the state, and binding on the contractor, and the indebtedness thus incurred

would be a *claim* for which the state would be liable.   While the laborer and materialman could obtain no execution against the state for the collection of a lien or claim, he could obtain a recommendatory judgment which would be the equivalent of a judgment and execution against an individual.   If an individual should enter into such agreements as above instanced, the laborers and materialmen might obtain judgment and execution against such parties.

"For the foregoing reasons, we conclude that the state cannot legally withhold from the plaintiff any claims that it may have allowed merely by reason of the claimant's having either worked for the contractor on these buildings and improvements or having furnished materials that were used therein.   On the other hand, it is justified in withholding any sum or sums for which it had become responsible either by reason of having engaged the laborers or promised to see that they were paid, or for materials used, or for the payment of which the state promised to stand responsible.

"In order for the state to be protected in payments made to others than the contractor, it must show that the claims allowed are such as the claimants could have, under the established rules of law, obtained recommendatory judgments on in this court.   It must appear that the state has in some manner incurred a legal liability for the payment of the claim.   Liability cannot rest alone on the fact that the claimants performed labor or furnished materials to the contractor for which a lien might have been preferred had the owner been an individual.

"Since the answer in this case alleges that the claims allowed by the state to subcontractors and laborers and materialmen were just and legal claims against the state as the owner of the premises, it is sufficient to raise an issue, and unless the parties hereto agree upon the facts, it will also be necessary to make a reference of this case for the taking of testimony.   The demurrer will be overruled and the motion to strike out parts of the answer will be denied."

Since the decision on the demurrer and motion, the evidence has been taken—some of it by depositions, and the remainder

of it before the clerk of this court as referee. The case has been argued and submitted on the evidence and the following stipulation:

"It is admitted between the parties hereto that the only question now in dispute and for the consideration of the court is the state's liability under the Soldier's Home contract for the following items as extras in excess of the contract price:

"Second floor finishing throughout.........$750
Stairs to second floor.....................  75
Hardware for above.........................  50
One dormer window..........................  17.50

"It is admitted that the total amount of $1,263 for the Soldiers' Home is correct. In case the court finds for the plaintiff on contested items above, the amount of these items are to be added to the sum of $1,263.

"It is admitted that the amounts are correct. Plaintiff waives all claims to extras for the Industrial School, leaving the amount for Industrial School at $3,035, which sum is admitted to be correct, subject to the contention of the board of examiners that the labor and materialmen under the clause of the contract interpreted by the court are entitled to these amounts."

It will be seen from the foregoing stipulation that this controversy has reduced itself to a dispute over the four items enumerated, namely: finishing second floor, stairs to second floor, hardware for second floor and one dormer window,— total, $892.50. This difference apparently grows out of a misunderstanding between the state board and the contractor as to the real intent of the parties at the time the contract was entered into and certain purported changes were made in the specifications. It seems that after the bids were submitted, it was found by the board that the total sum to be paid the architects, the contractor and the plumbers would exceed the appropriation. After several conferences and considerable figuring over the work, it was agreed that all three bidders should make cuts on their bids in order to bring the work within the appropriation. The original bid

had covered the completion of the second story of the hospital building at the Soldiers' Home.

There is attached to the specifications a single sheet on the letter-head of "Wayland & Fennell, Architects," containing an enumeration of items of work and material, and opposite each item, the figures apparently representing the number of dollars each item or piece of work would be worth. The heading to this sheet (marked Plaintiff's Exhibit "C") is: "Contemplated modification of Hospital Building Soldiers' Home." This sheet is signed by J. W. Walker, Contractor, and J. J. Guheen, Attorney General. It is admitted that it was attached to the specifications subsequent to the submission of bids for the work. This sheet (Plaintiff's Exhibit "C") contains, among other things, the following items:

    "Second floor finishing throughout..........$750.00
     Stairs  ...................................    75.00
     Hardware ..................................    50.00
     Dormers  ..................................    70.00"

The foregoing are the items now in controversy, with the exception that the plaintiff only claims pay for one dormer at $17.50. It is claimed by the plaintiff that in order to bring the bids within the appropriation, it was the intention to omit finishing the second floor, and consequently the hardware for that floor and the stairs and dormers, and that the figures set opposite each of these items represented the amount that should be deducted from the original bid. It is contended by the state, on the other hand, and positively testified to by the governor, that at no time did the board consent or agree to awarding the contract without providing for the second story being completed. The governor says it was positively understood that the second floor should be finished, and that he insisted upon it at all times. He also testifies that the contractor submitted some figures showing the amount he would throw off of his bid, and that the architects and plumbers did likewise, in order to bring the total bids within the appropriation. The contractor, who afterward became insolvent and left the state, has given his deposition,

and therein testifies that it was the understanding that the second floor should not be included in the contract, and that after the work was under way it was ordered and directed by the architects and superintendent, and that he accordingly had that work done, and that he should receive therefor the amounts noted in Plaintiff's Exhibit "C," which is the memorandum attached to the specifications.

It is useless to further review the evidence in this connection. After an examination of the whole evidence submitted, we are satisfied that the plaintiff is not entitled to recover for the four items in controversy, amounting to the total sum of $892.50. We are of the opinion that it was the intention of the parties and so understood at the time, as is clearly established by the evidence, that the second floor should be completed, and that the work and material therefor were covered and contemplated by the contract. The plaintiff should not recover for the foregoing items. Under the facts and the stipulation in the case, the plaintiff should receive the sum of $1,263, balance on the Soldiers' Home contract, and should receive the sum of $3,035, balance on the Industrial School contract, together with interest at seven per cent from June 3, 1906, amounting to $678.60. No costs awarded.

Sullivan, J., and Stewart, J., concur.